# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHARLES DAVID GILES,** : | |
|     Plaintiff : | CIVIL ACTION NO. 1:07-CV-00336 |
| : | |
| v. : | (Chief Judge Kane) |
| : | |
| **VOLVO TRUCKS NORTH** : | |
| **AMERICA, CHARLES DEBELLIS,** : | |
| **TERRY CHRISMAN, SR.,** : | |
| **MAUREEN A. JUDGE,** : | |
|     Defendants : | |

## MEMORANDUM

Before the Court is a motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Plaintiff's employer, Defendant Volvo Trucks North America ("VTNA"), and two VTNA employees, Defendants Charles DeBellis and Terry Chrisman. (Doc. No. 19.) For the reasons set forth below, the motion will be granted.

## I.   BACKGROUND[1]

In April 2004, Plaintiff Charles David Giles submitted an amended "Employee's Withholding Allowance Certificate," also known as a W-4 Tax Form, in which Plaintiff claimed he was exempt from federal tax withholding, to his employer, Defendant VTNA, through Defendant Chrisman. At approximately the same time, Plaintiff sent Defendant DeBellis, by certified mail, "all of the relative laws regarding his changed status [to being exempt] and his

---

[1] In accordance with the standard of review of a motion to dismiss, the Court will present the facts alleged in the complaint (Doc. No. 1) in the light most favorable to the plaintiff and draw all reasonable inferences in his favor. Additionally, because Plaintiff is proceeding *pro se*, the Court will consider the allegations in his "pretrial memorandum" when determining whether he has stated claims against the Defendants. (Doc. No. 7.) Unless otherwise indicated, this section is derived from the allegations in Plaintiff's complaint and pretrial memorandum. (See Doc. Nos. 1 & 7.) The Court notes that the statements in this section reflect neither the findings of the trier of fact nor the opinion of the Court as to the truth of Plaintiff's allegations.

legal demand to stop withholding federal Social Security (since he does not subscribe to government social programs)." (Doc. No. 7, at 4); (see also Doc. No. 25, at 5-6) (copies of Plaintiff's 2004 W-4). In an effort to fulfill Plaintiff's request (Doc. No. 25, at 3), personnel at VTNA manually entered on the form and into the payroll system that Plaintiff was taking 99 allowances, effectively preventing any withholding from Plaintiff's pay. Defendants Chrisman and DeBellis then forwarded to the IRS Plaintiff's amended W-4, apparently containing the notation that Plaintiff was taking 99 allowances.

For the remainder of 2004 until May 2006, the IRS accepted Plaintiff's claim that he was exempt from all federal tax withholding. On May 25, 2006, Plaintiff received a letter from Defendant Maureen A. Judge, an IRS agent, questioning his claim that he was exempt from federal withholding and/or entitled to take 99 allowances. In the letter, Defendant Judge explained that Plaintiff would have a limited amount of time to establish that he was exempt from federal tax withholding before his tax status would be changed to that of a single person with no allowances. (See Doc. No. 7, at 4); (see also Doc. No. 25, at 17-18)[2]. A copy of this IRS "lock-in" letter was sent to Defendants VTNA, Chrisman, and DeBellis. Plaintiff contends that VTNA, Chrisman, and DeBellis then illegally changed his "true status" to that of a single person with no allowances.

---

[2] Defendants attached to their motion to dismiss an April 2, 2007, letter from Defendant Judge that purports to be a "duplicate of the original lock-in letter that was issued with a date of May 24, 2006." (Doc. No. 25, at 18, *previously filed at* Doc. No. 19-3.) Plaintiff relies upon this document in support of his RICO claim as a predicate act of fraud. (Doc. No. 1, at 5) ("Maureen A. Judge sent a letter fraudulently claiming that Mr. Giles was indebted to the IRS constituting use of interstate communications by advancing a writing she knew to be false to Mr. Giles . . . ."); see also (Doc. No. 22, at 11) ("Plaintiff and the Defense have shown proof of their wrongdoing (Defense exhibits A and B)").

Following the change in Plaintiff's tax withholding status, Defendant Chrisman explained that he would no longer accept any tax documentation from Plaintiff. Nevertheless, Plaintiff provided Defendants Chrisman and DeBellis with "all the law and statutes concerning his status, the law pertaining to the collection of an unlawful debt, and their obligations to him and the IRS." (Doc. No. 1, at 5.) Meanwhile, Plaintiff endeavored to contact Defendant Judge to resolve the situation and regain his status as being exempt from federal withholding. Despite these efforts, Plaintiff claims that taxes continued being improperly withheld from his wages.

Plaintiff commenced this action on February 2, 2007, to assert claims against Defendants VTNA, Charles DeBellis, Terry Chrisman, Sr., and Maureen Judge for their "running a racket by taking money from Charles D. Giles, Agent to satisfy a nonexistent 'debt.'" (Doc. No. 7, at 8.) Although Plaintiff's claims suffer a lack of clarity, it appears that Plaintiff alleges Defendants unlawfully adjusted his federal tax withholding status and deprived him of property without due process of law, in violation of the Fifth Amendment, when they failed to provide him adequate notice and a hearing prior to the tax status change. Plaintiff further contends that Defendants' actions violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1961 et seq. As relief for these violations, Plaintiff seeks treble and punitive damages and costs. (Doc. No. 1, at 2.)

In their motion to dismiss, Defendants VTNA, DeBellis, and Chrisman (collectively the "Employer Defendants") challenge the sufficiency of Plaintiff's pleadings, as well as their legal bases. The Employer Defendants contend that Plaintiff may not maintain a suit against them for withholding federal taxes from his wages pursuant to an IRS "lock-in" letter or for forwarding his W-4 to the IRS as required by law. Additionally, the Employer Defendants contend that

3

Plaintiff's Fifth Amendment claim against them is deficient, as they are private entities and individuals, not federal or state actors. Finally, the Employer Defendants assert that Plaintiff has failed to adequately advance a RICO claim. The Court will address these contentions, and Plaintiff's responses thereto, in turn.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint, Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993), and is properly granted when, taking all factual allegations and inferences as true, the moving party is entitled to judgment as a matter of law. Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990). Although the Court is generally limited in its review to the face of the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d. Cir. 1997); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Although the moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2007), the plaintiff has an obligation to allege facts sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (internal citations omitted); see also Kost, 1 F.3d at 183 (A plaintiff must "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that those elements exist.") (citation omitted). In addition, although for the purposes of a motion to dismiss pursuant to Rule 12(b)(6) the Court must accept as true all factual allegations in the complaint, the Court is "not bound to accept as true a legal

conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

### III. DISCUSSION

#### A. Plaintiff cannot state a claim based upon the Employer Defendants' compliance with an IRS directive to withhold taxes from Plaintiff's wages

The Employer Defendants contend that any claim against them based upon their withholding taxes from Plaintiff's wages in compliance with the IRS "lock-in" letter must fail as a matter of law in light of provisions in the Internal Revenue Code and related Treasury Regulations. The Court agrees. Under the Internal Revenue Code, an employer is shielded from liability to an employee for withholding that employee's taxes. See 26 U.S.C. § 3403. Section 3403 of the Internal Revenue Code states: "The employer shall be liable for the payment of the tax required to be deducted and withheld under this chapter, *and shall not be liable to any person for the amount of such payment*." Id. (emphasis added). Courts have repeatedly relied upon this language to hold that an employee may not bring a claim against his employer for withholding taxes from the employee's pay. See Shiaffino v. Genuardi's Family Markets, No. 00-1892, 2000 WL 1141857, at *1 (E.D. Pa. June 30, 2000) (finding the language of 26 U.S.C. § 3403 to be "clear and unambiguous," holding that a "plaintiff has no cause of action against its employer . . . for withholding taxes from his wages and paying them to the IRS," and remarking that "it would be against public policy and senseless to penalize [an employer] for simply obeying the law"); Wise v. Comm'r of the I.R.S., 624 F. Supp. 1124, 1128 (D. Mont. 1986) ("[A]n employee has no cause of action against his employer to recover wages withheld and paid to the government in satisfaction of federal income tax liability."); see also Benz v. United Parcel Serv., 815 F.2d 75, at *1 (6th Cir. 1987) ("[A]n employer cannot be made liable for failing to honor an employee's W-4 form when it has been directed to do so by the Internal Revenue

Service.") (citing cases).

In response to the Employer Defendants' argument, Plaintiff seems to challenge the applicability of § 3403 by arguing that the amounts were not "required to be deducted and withheld under this chapter." Plaintiff contends that the Employer Defendants were prohibited from withholding any amount from his wages in light of 26 U.S.C. § 3402(n)[3], and he asserts that neither the IRS, Defendant Judge, nor the Employer Defendants were permitted to dishonor his claim that he was exempt from federal withholding without a court order authorizing a change in his withholding status. (Doc. No. 22.) This argument, however, overlooks that the statute relied upon by Plaintiff, § 3402(n), specifically authorizes the development of regulations coordinating certain subsections of § 3402, and that it is pursuant to these regulations that Plaintiff's tax status was adjusted. The applicable Treasury Regulations in effect at the time (1) authorized the IRS to "notify the employer in writing that the employee is not entitled to claim a complete exemption from withholding" and (2) obligated the employer to "withhold tax on the basis of the maximum

---

[3] 26 U.S.C. § 3402(n) provides as follows:

> (n) Employees incurring no income tax liability
> Notwithstanding any other provision of this section, an employer shall not be required to deduct and withhold any tax under this chapter upon a payment of wages to an employee if there is in effect with respect to such payment a withholding exemption certificate (in such form and containing such other information as the Secretary may prescribe) furnished to the employer by the employee certifying that the employee—
> (1)   incurred no liability for income tax imposed under subtitle A for his preceding taxable year, and
> (2)   anticipates that he will incur no liability for income tax imposed under subtitle A for his current taxable year.
>
> The Secretary shall by regulations provide for the coordination of the provisions of this subsection with the provisions of subsection (f).

number of withholding exemptions specified in the written notice received from the IRS." 26 C.F.R. § 31.3402(f)(2)-1T(g)(ii)(2), and (g)(iv) (effective April 14, 2005, to July 12, 2007). Here, the Employer Defendants received a letter from the IRS in May 2006 questioning Plaintiff's claim that he was exempt from taxes and readjusting his withholding status "to that of a single person with 0 allowances," and in compliance with the letter, the Employer Defendants began to withhold federal taxes from Plaintiff's wages. (Doc. No. 7, at 4); (see also Doc. No. 25, at 17-18) (April 2007 IRS "lock in" letter, which is a duplicate of the May 2006 letter). That Plaintiff continues to dispute his obligation to pay taxes does not alter the fact that Employer Defendants were withholding amounts from Plaintiff's pay at the direction of the IRS, as required by law.

Accordingly, insofar as Plaintiff seeks to assert a claim against the Employer Defendants for acting in contravention of 26 U.S.C. § 3402(n) by failing to honor his W-4 form and for withholding taxes at the direction of the IRS, Plaintiff's claim fails as a matter of law.

> **B.** **Plaintiff cannot maintain his constitutional claims against the Employer Defendants**

Plaintiff asserts that the Defendants violated his Fifth Amendment right not to be deprived of property without due process of law by improperly modifying his tax withholding status and by withholding amounts from Plaintiff's wages. The Employer Defendants argue that they – a private entity and two private individuals – cannot be held liable for violating the Fifth Amendment because the Amendment "operates only as a restraint on the national government and on the states through the Fourteenth Amendment." (Doc. No. 19-2, at 13.) The Court agrees: Plaintiff has not stated a cause of action grounded in the Fifth Amendment against the Employer Defendants, a private entity and private individuals. See Cmty. Med. Ctr. v.

Emergency Med. Servs. of Northeastern Pennsylvania, Inc., 712 F.2d 878, 879 (3d Cir. 1983) ("Both the Fifth and Fourteenth Amendments shield individuals only from government action.") (emphasis added). The Employer Defendants are neither federal nor state actors.[4]

Moreover, even if Plaintiff were to establish that the Employer Defendants' conduct makes them federal actors, which he cannot, his claim would still fail. The Third Circuit has rejected the argument that a Bivens-style[5] action should lie against federal officials in this context:

> [A] damages remedy should not be inferred against an IRS agent pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, for alleged constitutional violations, because Congress has created an extensive scheme providing remedies to a plaintiff complaining of the conduct of government officials in connection with tax assessments and collections.

Shreiber v. Mastrogiovanni, 214 F.3d 148, 149 (3d Cir. 2000) (internal citation omitted); see Daniels v. Kowalkowski, No. 03-1045, 2004 WL 541733 (M.D. Pa. Feb. 4, 2004) (dismissing Plaintiff's claim "because Bivens actions do not extend to violations of due process rights in relation to tax assessment and collection"); Bell v. Rossotti, 227 F. Supp. 2d 315, 321 (M.D. Pa. 2002) (dismissing certain claims because "no Bivens action should be implied against agents of

---

[4] Plaintiff does not appear to be asserting a claim against the Employee Defendants under 42 U.S.C. § 1983; however, to the extent that he is, Plaintiff would be unable to establish that the Employer Defendants were acting under color of state law. See Stonecipher v. Bray, 653 F.2d 653, 401 (9th Cir. 1981) (upholding district court's dismissal of plaintiff's § 1983 action against the IRS because "its agents performed no acts under color of state law"); Wise v. Comm'r of the I.R.S., 624 F. Supp. 1124, 1129 (D. Mont. 1986) ("Any actions taken by the [private employers] were taken "in compliance with the instructions of the IRS were done under color of *federal* law, and are thus not actionable under Section 1983.").

[5] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) (recognizing an implied cause of action against federal officers alleged to have violated a citizen's constitutional rights).

the IRS in the course of investigating and making tax assessments"). Accordingly, the Court will dismiss with prejudice Plaintiff's claim that Employer Defendants are subject to liability under the Fifth Amendment for Due Process violations incurred in connection with the modification of his federal tax withholding status and implementation of the resultant federal tax withholding.

> **C.    Plaintiff has failed to state a civil claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO")**

Plaintiff's final claim is that Defendants violated § 1962 of RICO and that their illegal conduct caused him injury to his business and property. (Doc. No. 1, at 2); see also 18 U.S.C. § 1964(c). Plaintiff does not specify which subsection(s) of § 1962 Defendants allegedly violated; rather, he refers generally to the Defendants' "collection of an unlawful debt" as well as their "continued pattern of racketeering activities." (Doc. No. 1, at 2); see 18 U.S.C. § 1962; (see also Doc. No. 22, at 3) ("This action relates to defendants['] collection of an unlawful debt and use of interstate communications in a scheme of fraud. . . .").

Insofar as Plaintiff asserts that Defendants have attempted to collect an "unlawful debt," his disputed tax obligations do not fall within RICO's statutory definition of an "unlawful debt." Under RICO, an "unlawful debt" is defined as:

> [A] debt (A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State, or political subdivision thereof, or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof, or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.

18 U.S.C. § 1961(6). Here, Plaintiff clearly believes that Defendants were wrong to withhold

money from his wages; however, the amounts withheld are in no way related to illegal gambling activity or usurious lending. See id. Accordingly, Plaintiff cannot assert a RICO claim based upon the collection of an "unlawful debt."

Plaintiff's assertion that Defendants have engaged in "a pattern of racketeering activity" is likewise without merit. A "pattern of racketeering activity" is a term of art that is statutorily defined to "require[] at least two acts of racketeering activity." 18 U.S.C. § 1961(5). Section 1961(1) contains a laundry-list of activities that qualify as predicate acts, including mail fraud (18 U.S.C. § 1341[6]), the criminal provision upon which Plaintiff bases his case. 18 U.S.C. § 1961(1); see Johnson v. Hoffa 196 F. App'x 88, at 90 n.3 (3d Cir. 2006) (noting that § 1961(1)

---

[6] The mail fraud statute provides as follows:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1341.

"catalogues an exhaustive list of 'racketeering activities' RICO encompasses"); see also Annulli v. Panikkar, 200 F.3d 189, 200 (3d Cir. 1999) (same).  The elements of the predicate act of mail fraud are: "(1) the defendant's knowing and willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use of the mails . . . in furtherance of the scheme."  United States v. Kemp, 500 F.3d 257, 279 (3d Cir. 2007) (quoting United States v. Antico, 275 F.3d 245, 261 (3d Cir. 2001)).

Because Plaintiff's civil RICO claim is predicated on acts of mail fraud (Doc. No. 7, at 7-8), Federal Rule of Civil Procedure 9(b) requires that the fraud be pleaded with specificity.  Lum v. Bank of Am., 361 F.3d 217, 220 (3d Cir. 2004); Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").  "Rule 9(b) requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  Allan Neurosurgical Assocs., Inc. v. Lehigh Valley Health Network, No. 99-4653, 2001 WL 41143, at *3 (E.D. Pa. Jan. 18, 2001) (quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984)).  As the Third Circuit has explained: "Although Rule 9(b) falls short of requiring every material detail of the fraud, such as date, location, and time, plaintiffs must use alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  California Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 144 (3d Cir. 2004) (internal quotation marks and citation omitted)); see also id. (quoting DiLeo v. Ernst & Young, 901 F.2 624, 647 (7th Cir. 1990), which states that pleading the "circumstances constituting the fraud" with particularity under Rule 9(b) generally

means specifying the "the who, what, when, where, and how: the first paragraph of any newspaper story").

Here, Plaintiff's conclusory allegations fall well short of pleading mail fraud with the particularity required by Rule 9(b).  In his complaint and pretrial memorandum, Plaintiff makes various generalized references to Defendants' scheme to defraud him and identifies three mailings that allegedly furthered this undefined scheme.  In particular, Plaintiff asserts that the following constituted mail fraud: (1) Defendants Chrisman and Debellis's forwarding Plaintiff's altered W-4 form to someone at the IRS in April 2004; (2) Defendant Judge's May 2006 letter questioning Plaintiff's claim of a complete exemption from federal withholding and directing his employer to adjust his withholding status; and (3) another "false writing" mailed to the IRS at an undisclosed time by the Employer Defendants or "other unknown parties in the employ of VTNA."  (Doc. No. 7, at 7-8.)

The third "predicate act" identified by Plaintiff is so vague that it merits no discussion.  The allegations of the first and second predicate acts are also lacking in particularity.  With respect to the first predicate act – Defendants Chrisman and Debellis's forwarding Plaintiff's W-4 form – Plaintiff appears to be claiming that the addition of "99 allowances" on his W-4 amounted to a fraudulent misrepresentation.  Plaintiff, however, fails to specify how this alteration in any way misrepresented or altered his expressed desire to be exempt from all federal withholding, to whom the "misrepresentation" was communicated, or how this communication furthered Defendants' alleged "fraudulent scheme."  With respect to the second predicate act, Plaintiff does not identify any particular false or misleading statement made in the May 2006 letter by Defendant Judge, a letter of the type authorized by the treasury regulations then in

effect, see 26 C.F.R. § 31.3402(f)(2)-1T(g) (effective April 14, 2005 to July 12, 2007). Plaintiff's primary complaint regarding this letter is that it directs his employer to withhold federal taxes from his wages, even though Plaintiff claims he is – or should be – exempt from all federal withholding.  The Court has reviewed the complaint and pretrial memorandum, as well as Plaintiff's arguments against dismissal, and agrees with the Employer Defendants that Plaintiff has failed to plead with particularity that any Defendant engaged in mail fraud, the predicate violations allegedly underlying his civil RICO claim.[7]

In addition to alleging a pattern of racketeering activity that includes at least two racketeering acts, a plaintiff must also allege the existence of an enterprise affecting interstate commerce, that the defendants were employed or associated with the enterprise, and that the

---

[7] The Employer Defendants further argue that Plaintiff's claim must fail because he has not pleaded that there "was reasonable reliance by anyone on the W-4 forms." (Doc. No. 20, at 11); see, e.g., Weaver v. Mobile Diagnostech, Inc., No. 02-1719, 2007 WL 1830712 (W.D. Pa. June 25, 2007) (noting the conflicting approaches to the proximate cause analysis used by courts in the context of civil RICO cases based upon fraud); Walter v. Palisades Collection, LLC, 480 F. Supp. 2d 797, 807-09 (E.D. Pa. 2007) (discussing the majority and minority approaches and ultimately siding with the majority approach that "[r]eliance is a necessary component of proximate causation for a civil RICO action predicated on fraud.").  The Court need not determine for the purposes of this case whether reliance by the plaintiff or some closely related third party on the allegedly fraudulent mailing is a necessary component to meeting the proximate cause requirement of a civil RICO claim based upon fraud.

It is worth noting, however, the serious causation problems posed by Plaintiff's assertion that the April 2004 mailing of his altered W-4 was part of a deliberate and successful effort to cause him injury.  First, as a factual matter, the W-4 as forwarded to the IRS plainly conveyed Plaintiff's intention to claim a complete exemption from federal withholding, regardless of the insertion of the "99" in the allowances claimed line.  Second, Plaintiff does not specify who at the IRS received the altered W-4 form, or in any way link it to Defendant Judge's letter on behalf of the IRS over two years later instructing the Employer Defendants to withhold taxes from Plaintiff's wages.  Third, Plaintiff's bald assertion that he should be exempt from federal withholding simply because he "does not subscribe to government social programs" (Doc. No. 4, at 4) and has not freely consented to being taxed (Doc. No. 25, at 12-13) is factually and legally unsupportable.  (This final consideration also calls into question Plaintiff's contention that he has suffered a legally cognizable "injury" as a result of the federal withholding.)

defendants participated in the conduct of the affairs of the enterprise in order to state a civil RICO claim. See Annulli, 200 F.3d at 198; see also Lum, 361 F.3d at 223; United States v. Console, 13 F.3d 641, 652-53 (3d Cir. 1993). Plaintiff has not adequately pleaded these elements of a civil RICO claim. For example, Plaintiff's only reference to an "enterprise" is his conclusory statement that he has "established that an enterprise exists that undeniably effects interstate commerce" simply by naming VTNA, "an enterprise to which Charles Debellis and Terry Chrisman Sr. belong[]." (Doc. No. 7, at 8.) Plaintiff has not in any meaningful way described the relationship of the Defendants to one another, nor has he made allegations that they were aware of the existence of their "enterprise" and involvement therein. Console, 13 F.3d at 653 ("To satisfy the second element or 'association' requirement of section 1962(c), the defendant 'must be shown to have been *aware* of at least the general existence of the enterprise named in the indictment.'") (citations and quotations omitted). Having considered Plaintiff's allegations, the Employer Defendants' arguments, Plaintiff's responses thereto, and the relevant law, the Court finds that Plaintiff has failed to state a civil RICO claim based upon either the collection of an unlawful debt or upon Defendants' alleged involvement in racketeering activities.

        **D.**      **Remaining claims against Defendant Maureen A. Judge**

Having determined that all claims against the Employer Defendants should be dismissed, the only remaining Defendant in this action is Maureen A. Judge, the IRS agent who mailed the Employer Defendants the May 2006 "lock-in" letter.[8] Plaintiff has asserted claims against

---

[8] The Court acknowledges that Defendant Judge has not entered an appearance in this action and that there are unresolved issues regarding the adequacy of service. The Court will not address these issues at this time, however, because as explained below, the *sua sponte* dismissal

Defendant Judge under RICO and the Fifth Amendment.

*Sua sponte* dismissal of a claim is disfavored and inappropriate unless the basis for dismissal is apparent from the fact of the complaint.  Ray v. Kertes, 285 F.3d 287, 297 (3d Cir. 2002).  As with any motion for failure to state a claim, a Court considering *sua sponte* dismissal must satisfy itself that the Plaintiff is unable to state a claim upon which relief may be granted.  Bryson v. Brand Insulations, Inc., 621 F.2d 556, 559 (3d Cir. 1980).  If the complaint is "baldly inadequate as a matter of law, the court may, on its own motion, dismiss the complaint or a claim cited therein."  Pennsylvania State Troopers Assn. v. Commonwealth of Pennsylvania, No. 06-1079, 2007 WL 853958, at *9 (M.D. Pa. Mar. 20, 2007) (citing cases and scholarly materials).  This practice promotes the prompt and efficient disposition of cases and protects valuable judicial resources by expediting the dismissal of cases that lack "a shred of a valid claim."  Id. (quoting Baker v. Dir. U.S. Parole Comm'n, 916 F.2d 725, 726 (D.C. Cir. 1990)).

Before *sua sponte* dismissal is appropriate, however, a Court must give a plaintiff notice and an opportunity to be heard on the legal viability of his complaint.  Pourghoraishi v. Flying J, Inc., 449 F.3d 751, 765 (7th Cir. 2006); Dougherty v. Harper's Magazine Co., 537 F.2d 758, 761 (3d Cir. 1976).  The notice and opportunity to be heard may be provided by the act of a single defendant who raises a defense applicable to all defendants.  See Pourghoraishi, 449 F.3d at 765-66; Coggins v. Carpenter, 468 F. Supp. 270, 279 (E.D. Pa. 1979); see also Ogden v. Huntington County, No. 06-2299, 2007 WL 2343814, at *3 (M.D. Pa. Aug. 15, 2007).  In the instant case, the Employer Defendants argued that Plaintiff's civil RICO claim was inadequately pleaded and should fail as a matter of law.

---

of the claims against Defendant Judge on other grounds is appropriate.

The Court concludes that *sua sponte* dismissal of Plaintiff's civil RICO claim against Defendant Judge is proper. Plaintiff was on notice of the failure to state a claim defense and the legal arguments in support thereof, as much of the Employer Defendants' brief is devoted to this argument. Presumably, Plaintiff advanced every factual and legal argument at his disposal to invalidate this claim, and his response to a similar motion by Defendant Judge would be no different. Accordingly, for the reasons detailed above, the Court finds that dismissal of Plaintiff's civil RICO claim as to Defendant Judge is appropriate.

Moreover, Plaintiff's constitutional claims against Defendant Judge fail as a matter of law because, as previously stated, <u>Bivens</u> actions do not extend to violations of due process rights in relation to tax assessment and collection. <u>Shreiber v. Mastrogiovanni</u>, 214 F.3d 148, 149 (3d Cir. 2000); <u>see</u> <u>Daniels v. Kowalkowski</u>, No. 03-1045, 2004 WL 541733 (M.D. Pa. Feb. 4, 2004). Thus, Plaintiff's Fifth Amendment claim against Defendant Judge will also be dismissed.

## IV. CONCLUSION

In conclusion, the Court will grant the Employer Defendants' motion to dismiss, and will dismiss, *sua sponte*, the remaining claims against Defendant Judge. Because the Court believes that the filing of an amended complaint would be futile, it will not automatically grant Plaintiff leave to amend.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CHARLES DAVID GILES,** : | |
|     Plaintiff : | **CIVIL ACTION NO. 1:07-CV-00336** |
| : | |
| v. : | **(Chief Judge Kane)** |
| : | |
| **VOLVO TRUCKS NORTH** : | |
| **AMERICA, CHARLES DEBELLIS,** : | |
| **TERRY CHRISMAN, SR.,** : | |
| **MAUREEN A. JUDGE,** : | |
|     Defendants : | |

## ORDER

**AND NOW** this 20th day of February, 2008, upon consideration of the motion to dismiss by Volvo Trucks North America, Charles DeBellis, and Terry Chrisman, Sr., and for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT** the motion to dismiss (Doc. No. 19) is **GRANTED**. All claims against Defendants Volvo Trucks North America, Charles DeBellis, and Terry Chrisman, Sr., are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendant Maureen A. Judge are **DISMISSED**.

The Clerk of Court is directed to close the case.

                                                S/ Yvette Kane
                                                Yvette Kane, Chief Judge
                                                United States District Court
                                                Middle District of Pennsylvania